```
                                                            ┌─────────────────────────────┐
                                                            │ USDC SDNY                   │
                                                            │ DOCUMENT                    │
                                                            │ ELECTRONICALLY FILED        │
                                                            │ DOC #:_____ │
                                                            │ DATE FILED: 7/22/15         │
                                                            └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
ALEXANDER ORLANDO MULLINS,                                :
                                    Plaintiff,            :
                                                          :            13 Civ. 6800 (LGS)
              -against-                                   :
                                                          :            ORDER
CONSOLIDATED EDISON COMPANY OF                            :
NEW YORK, INC.,                                           :
                                    Defendant.            :
---------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

          Pro se Plaintiff Alexander Orlando Mullins brings suit against his employer, Defendant

Consolidated Edison Company of New York, Inc. ("Con Edison"), alleging failure to promote

and unequal terms and conditions of employment on the basis of his race, color and national

origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human

Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").  Defendant

moves for summary judgment.  For the reasons below, Defendant's motion is granted in its

entirety.

## I.  BACKGROUND

          The facts are taken from the parties' submissions in connection with the motion, and are

undisputed except as otherwise noted.

### A.  Plaintiff's Initial Employment at Con Edison

          Plaintiff is a black, 40-year-old man who was born in Barbados and immigrated to the

United States in 1983.  Con Edison, a public utility company, hired him in 2005 as a Customer

Field Representative in the Customer Operations department.  In his time at Con Edison, Plaintiff

has been represented by the Utility Workers Union of America AFL-CIO, Local 1-2 (the

"Union").

### B. Operations Support Group

From 2008 until the present, Plaintiff has been employed in Con Edison's Gas Operations Field Support group ("Operations Support") in the larger Gas Operations department.  In 2008, Plaintiff applied to be, and was hired as, an administrative clerk in the group.  The position of administrative clerk is part of a "job family" or "career path" in Gas Operations.  An administrative clerk can, after working the requisite years and clearing the necessary tests, move to the position of office assistant and then to administrative assistant.   Plaintiff affirmed in his deposition that administrative assistant is "the end of the line as far as that career path."  In February 2009, Plaintiff was promoted to "office assistant," and currently holds the position of "administrative assistant."

Ellen Simpson, who is white, was Plaintiff's first manager in Operations Support.  Ms. Simpson reported to the department manager Mario Smith, a black man, who is still the department manager.  Alecia Copeland replaced Ellen Simpson as Plaintiff's direct supervisor for at least two years beginning in 2009.  Ms. Copeland is black, and according to Plaintiff, is Jamaican.  While Ms. Copeland served as Plaintiff's direct supervisor, Ms. Simpson remained at Gas Operations as Plaintiff's "Second Level Manager," until Tom Hagman, who is white, replaced her in December 2010.  At all relevant times, the Vice President and the Senior Vice President of Gas Operations were also black.

Plaintiff joined Operations Support in 2008 as the third administrative clerk.  The other clerks were Jennifer Fields, who is black, and John Paul Freire, also called John Paul Montalvo, who is Hispanic.  In his deposition, Plaintiff refers to Mr. Freire as "JP," and, for ease of reference, so will this Opinion.

In Operations Support, Plaintiff was assigned "administrative" tasks, such as inventory control, data entry and maintaining supplies.  Plaintiff also performed "technical" tasks which he considers more akin to those performed by "analysts," such as troubleshooting computer hardware and software issues and re-imaging drives.  Plaintiff was expected to perform both technical and administrative tasks from the beginning of his tenure at Operations Support.  For example, in September 2008, Plaintiff's then-manager Ellen Simpson explained in Plaintiff's performance review that Plaintiff "ha[d] been eager to learn the technical aspects of Operations Support," an observation she reiterated in the October 2008 review.  In the March 2009 review, however, Ms. Simpson noted that Plaintiff was more interested in and adept at technical assignments but that he "need[ed] to improve on his follow-through with administrative tasks."  Plaintiff testified that his "duties never changed" in his time at Operations Support, even though his titles changed.  He also testified that while his co-clerk Jennifer Fields never performed "technical" tasks, the other co-clerk JP, like Plaintiff, routinely performed them.

## C.  Plaintiff's Performance Evaluations

From September 2008 until March 2009, Ms. Simpson gave Plaintiff three favorable performance reviews and pay raises.  In his September 2008 evaluation, on a scale of "Unsatisfactory," "Marginal," "Satisfactory" and "Superior," she rated Plaintiff "Satisfactory" in all 11 metrics, including "work quality," "cooperation," "reliability" and "dependability."  In his October 2008 evaluation, Plaintiff again received "Satisfactory" in all areas except "adaptability," in which Ms. Simpson rated him "Superior."  In the March 2009 evaluation, Ms. Simpson rated Plaintiff "Superior" for "cooperation," but reduced his rating in "dependability" from "Satisfactory" to "Marginal."  She rated Plaintiff "Satisfactory" in all other areas.  In her

comments, she noted that Plaintiff "needed to be prompted to complete [certain] administrative tasks."  Nonetheless, Plaintiff's "overall rating" remained "Satisfactory."

In June 2009, Ms. Copeland completed Plaintiff's one-year evaluation.  She rated Plaintiff as "Satisfactory" overall and granted him a pay raise, but rated his "work product" and "dependability" as "Marginal."  All other ratings, including "reliability," were "Satisfactory." She noted that she wanted to see Plaintiff "be more proactive in his current role[] by . . . owning his required responsibilities."  When asked about this evaluation at his deposition, Plaintiff stated he "understood the work quality part because [he was] not always . . . organized," but "the dependability part, [he] never understood" because "[i]f someone is reliable, they are dependable."  Plaintiff further explained that while "[m]ost of [his] work was completed on time[,] [s]ometimes things fell on the side."  "In other words," Plaintiff testified, "I am not a model employee."

In October 2009, Ms. Copeland again rated Plaintiff as "Satisfactory" overall and granted him a pay raise, but again rated his "work product" and "dependability" as "marginal."  In her comments, Ms. Copeland explained that Plaintiff's inability to complete his tasks on time had "cause[d] negative feedback[] from . . . customers," and for the last two months "she had to go to [Plaintiff] on a continuous basis asking for the status of various job assignments."

In February 2010, Ms. Copeland gave Plaintiff an overall rating of "Unsatisfactory" and denied him a pay raise.  She gave Plaintiff a rating of "Marginal" in "work quality," "work quantity" and "dependability."  Ms. Copeland noted in her comments that Plaintiff's work quality had fallen "below satisfactory standards."  She stated that Plaintiff failed to meet deadlines and "need[ed] to be constantly reminded" to complete his tasks.  At his deposition, Plaintiff explained that for the period covered by the February 2010 review, he had been tasked with researching and

acquiring a computer-based inventory system for his group -- without any help from his peers. Because he was busy with this project, he did not attend to the usual tasks "as much." He also agreed with Ms. Copeland's observation that he had to be "constantly reminded" to fulfill his various tasks.

Plaintiff's next performance evaluation in June 2010 looked very similar to his February 2010 evaluation. Ms. Copeland again gave Plaintiff an overall rating of "Unsatisfactory," denied him a pay raise, and rated him "Marginal" in "work quality," "work quantity" and "dependability." She noted that "[s]ince [Plaintiff's] last review, his work quality has remained the same and that is cause for concern." She reiterated that Plaintiff's untimely work continued to generate "negative customer feedback" and he had to be "constantly reminded" to finish assigned tasks. She noted that, although Plaintiff had implemented the computerized inventory system, "to date, he has still not trained the entire Support Applications team in the use of the software." At his deposition, Plaintiff testified that he had not been able to train all his co-workers because he wanted to do it efficiently as a group, which proved difficult since his co-workers were rarely at their desks at the same time. Plaintiff confirmed that he had not filed any grievances with the Union regarding his two consecutive "Unsatisfactory" reviews. Plaintiff also affirmed that under Con Edison policy, "you need a year after an unsatisfactory review in order to apply" for another position.

Plaintiff's two remaining performance evaluations in the record -- dated October 2010 and October 2011 -- are positive. In October 2010, Ms. Copeland gave Plaintiff an overall "Satisfactory" rating and granted him a pay increase. She rated him "Superior" in five of the eleven metrics, "Satisfactory" on the rest, and commended the "vast improvement" Plaintiff had made since his last review. Plaintiff's October 2011 review by his new supervisor, Eugene

Morkov, was even stronger.  Plaintiff's overall rating was "Superior," and he was rated "Superior" in six of the eleven metrics.

### D.  Gas Operations Analyst Positions

In 2008 and again in 2009, Gas Operations posted job openings for "Analyst" positions. Plaintiff did not apply for either position.  The 2008 position was filled by Yuv Raj Singh, who had joined Gas Operations after Plaintiff.  The 2009 position was cancelled under a company-wide hiring freeze and never filled.

Plaintiff explains that he did not apply for the 2008 position because his supervisors had not made him aware of it, and he did not apply for the 2009 position because he was told it was meant for JP.  He also states that he was told the 2009 position required a college degree, even though, according to Plaintiff, JP did not have such a degree.

In November 2010, Plaintiff applied for an Associate Analyst position in Operations Support that was posted in October 2010.  In January, 2011, he received an email from Human Resources explaining that he was ineligible for the position because he did not have a satisfactory discipline record.  Plaintiff testified that he vigorously challenged Human Resources' characterization of his discipline record, and ultimately Human Resources told him that he was ineligible not because of his disciplinary record, but because of his negative performance evaluations.  Plaintiff expressed confusion at this explanation because, according to him, both Ms. Copeland and Ms. Simpson had encouraged him to apply for the position despite writing the negative performance evaluations.

Plaintiff applied for another Analyst position in Operations Support in late November 2010, the same day it was posted.  In his declaration in support of Defendant's motion, Mario Smith, the Department Manager for Gas Operations, states that both the October and November

2010 Analyst postings were expected to be filled within a few months of posting in early 2011, but because of budgetary constraints, both positions were cancelled and never filled.

Plaintiff says that he did not receive any notice that the November 2010 position had been cancelled and found out on an unspecified date only when he asked Ms. Simpson.  Plaintiff testified that he believed the Analyst positions were "pulled in order to discriminate against me," as otherwise "it would be a great coincidence that I applied for two separate positions and they both g[o]t pulled."

**E.  System Analyst Position with Information Resources**

In July 2011, Luis Castro, who is Hispanic and a Project Specialist in Con Edison's Information Resources department, posted a job for a System Analyst in his group.  Plaintiff applied for this position.

After an initial screening, four candidates were rejected.  In the first week of August 2011, Mr. Castro conducted technical interviews on the telephone with Plaintiff and three other remaining candidates and sent them a written exercise via email.  Based on the interview and written exercise, Mr. Castro rejected one of the four remaining candidates.  The three remaining candidates and their interview scores were: JP (75%), Plaintiff (64%), and Harold Gonzalez (32%).  On the written exercise, JP's work was deemed excellent, Gonzalez's reasonably good and Plaintiff's poor.  In addition, Plaintiff's written response had been submitted late and lacked the detail of the other two responses.

Plaintiff explained that he had not expected a written exercise to be sent via email because Mr. Castro had told him to expect a follow up phone call after the initial technical interview.  The written exercise was sent to his email at 2:46 p.m. on Friday, August 5, 2011, and required a response by 8 a.m. the next Monday, August 8, 2011.  Plaintiff stated that his hours were 7 a.m.

until 3:30 p.m., and on that Friday he did not have a chance to check his email before leaving work because he had been working away from his desk all day.  Plaintiff also stated that, unlike his co-workers, he did not have a smartphone that allowed him to check his work email remotely. He explained that he "rushed" his response when he saw the email Monday morning and submitted his four-sentence long written exercise at 10:12 a.m.  In his declaration, Mr. Castro expressed concern at Plaintiff's excuse for his late response because "[t]he fact that [Plaintiff] would go home on a Friday afternoon without checking his emails seems to indicate poor work habits and a lack of initiative."

After the phone interview and written exercise, each of the three candidates was called for a "structured interview" and asked 55 pre-selected questions that related to eleven performance factors, including "job knowledge," "decision-making," "leadership," "teamwork" and "personal responsibility."  Mr. Castro and two others -- also Hispanic -- conducted the interviews and reached a consensus on the candidates' scores as follows: JP -- 39; Plaintiff -- 29; and Gonzalez -- 28.  In the end, JP was the top candidate, followed by Plaintiff and Gonzalez respectively.

Before making a final decision, Mr. Castro contacted Ms. Copeland, who had supervised both JP and Plaintiff.  Ms. Copeland gave positive feedback for JP, but provided negative comments about Plaintiff, including that she had caught Plaintiff sleeping on the job and had to push him to complete his tasks.  After conferring, Mr. Castro and his two colleagues decided to offer the position to JP, who accepted in September 2011.

Plaintiff opined that Mr. Castro gave preferential treatment to JP because they were friends.  Plaintiff stated that JP "used to have pictures on his Facebook with Luis Castro and some other people from [Information Resources] and Con Edison hanging out.  It wasn't a secret." Plaintiff testified that he did not believe JP was qualified for the job, and that the all-Hispanic

interview panel had selected JP over Plaintiff because JP is Hispanic.  Plaintiff also stated that JP

got good customer feedback for his work in Gas Operations because "most of the people in Gas

Operations knew his stepfather," who either was or had been a Con Edison employee.

   As to being caught sleeping on the job, Plaintiff testified that while Ms. Copeland did

catch him "a couple of times," he "wasn't even sleeping," he was "just dozing off."  Plaintiff

protested that he should not have been singled out for sleeping because others in his group,

including JP, had done the same thing.  He stated that he did not know whether Ms. Copeland or

Ms. Simpson knew that JP had slept on the job, but "assum[ed] they did" because "[i]t was a joke

around the office."

   The day after JP accepted the offer for the Analyst position in Information Resources, the

offer was rescinded.  Human Resources discovered that JP was ineligible for promotion because

he was being disciplined by Gas Operations for taking a Con Edison vehicle home without

authorization.  After rescinding JP's offer, Human Resources, under Mr. Castro's direction,

solicited external candidates for the position and received approximately 40 applications.  One of

the candidates was Tedrick Delos Reyes, a contract worker, who had been performing the duties

of the System Analyst job before it was posted.  According to Mr. Castro, Mr. Delos Reyes was

selected because he was better qualified for the job; he had performed good work and

demonstrated dedication in the same position as a contractor.  Mr. Delos Reyes started in the

position on December 1, 2011.

   Plaintiff does not dispute that Mr. Delos Reyes was qualified for the job, but asserts that

he was equally qualified.  The record is silent as to Mr. Delos Reyes' race, but Plaintiff testified

that he is Hawaiian and not "dark-skinned or black."  In any case, Plaintiff does not argue that

Mr. Delos Reyes was selected for race-based reasons.  Instead, he testified that Mr. Delos Reyes "was given the job because they knew him" and not because he was qualified.

### F.  Other Evidence of Discrimination

At his deposition, Plaintiff testified that he felt discriminated against in various ways during his time at Con Edison.  First, Ms. Simpson "favored" JP in terms of giving him overtime opportunities and ignoring indiscretions such as lateness and arriving at work "tipsy."  The only reason Plaintiff could ascribe to that preferential treatment was "race and color."  Plaintiff testified, "I'm the only black male in my office for the past six years. . . . Like[] I have always said, that is very interesting."  Plaintiff stated that while Ms. Simpson never made any comments derogatory of his race or national origin, he remembered the following interaction because it "stands out": "we were speaking . . . about our backgrounds[,] and she said, Well, you speak well."

Second, JP made racial and ethnic jokes when they worked together in Operations Support.  "If something didn't go my way," Plaintiff testified, JP would say, "Because you're black, right."  He also made jokes regarding Jennifer Fields and "joked with her, back and forth" and called her "Bitch."  While Plaintiff did not know whether his supervisors heard JP's jokes, he stated that Ms. Copeland "should have overheard" them because she was "[i]n hearing distance."

Third, Plaintiff testified that he had been surprised by how un-meritocratic Con Edison was:

> When I came to Con Edison, I expected everything to be judged on merit, not by race, color, or friendship or -- does he speak Spanish?  Is he going to be cool with us because he's not Spanish?  But that's all I've seen since I've been at Con Edison.  Either you know someone or your family member worked for Con Edison before.  Most of the positions I [have] seen -- w[ere]n't based on merit.  It was based on something completely different, and that's incredible to me, it really is.

10

### G. Exhaustion of Remedies

Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC") on February 27, 2012, complaining of discrimination based on race and national origin. The substantive portion of the Charge states:

> On or about August through October 2011, I have applied for a system analyst position. I was fully qualified for this position, but the job was given to a less qualified applicant who is not of African or Barbadian descent. I have witnessed many others who are not of African or Barbadian descent who were promoted and hired who were less qualified than me and others like me. Also I am currently doing the work of a Computer Analyst without the pay or title.

After obtaining a right to sue notice from the EEOC, Plaintiff timely filed the Complaint in this action on September 25, 2013, and filed the operative Amended Complaint on February 26, 2014.

## II.    LEGAL STANDARD

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the court shows that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Young v. United*

*Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *ln re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

If the non-moving party has the burden of proof on a specific issue, the moving party may satisfy its own initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim.  *See, e.g.*, *Celotex,* 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  In other words, summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In addition, when a party appears pro se, courts are required to construe broadly pro se submissions and interpret them "to raise the strongest arguments that they suggest."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

## III.   DISCUSSION

### A.  Failure to Promote

#### 1.  *Statute of Limitations*

Plaintiff's failure to promote claims are barred by the statute of limitations except (1) his Title VII, NYSHRL and NYCHRL claims arising out of Defendant's failure to promote him to the November 2010 and the 2011 Analyst position, and (2) his NYSHRL and NYCHRL claims based on Defendant's failure to promote him for the October 2010 Analyst position.

Title VII requires a Plaintiff to file a claim with the EEOC within 300 days of an alleged adverse action.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).

Because "the timeliness requirement of Title VII is analogous to a statute of limitations," *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006), it is an affirmative defense on which Defendant bears the burden. *Cf. Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 456 (S.D.N.Y. 2014) ("defendant's burden to prove that plaintiff did not exhaust [her] administrative remedies in a timely manner"); *Cobb v. XSPORT Fitness, Inc.*, No. 09 Civ. 3553, 2010 WL 1741370, at *8 (E.D.N.Y. Apr. 28, 2010) ("timeliness requirement of Title VII is an affirmative defense"). Plaintiff filed his Charge with the EEOC on February 27, 2012. Accordingly, any Title VII claims that Defendant can establish accrued before May 3, 2011, are time barred.

The NYSHRL and the NYCHRL have a three-year statute of limitations. N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-502(d). "It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000). This action was filed on September 25, 2013. Accordingly, any NYSHRL and NYCHRL claims that Defendant can show accrued before September 25, 2010, are time barred.

All job postings potentially relevant to Plaintiff's failure to promote claims are summarized in the table below. Applying the Title VII cut-off date of May 3, 2011, and construing all facts in Plaintiff's favor, the only timely claims arise from (1) the last job posting in July 2011, and (2) the November 2010 posting, for which Defendant has not established the date the position was cancelled. Applying the NYSHRL and NYCHRL cut-off of September 25, 2010, the claims arising from the two 2010 and the one 2011 job postings are timely.

| Date of Posting | Whether Plaintiff Applied | Date of Outcome |
|---|---|---|
| 2008 posting | Plaintiff did not apply. | 2008, Yuvraj Singh hired. |
| 2009 posting | Plaintiff did not apply. | 2009, Position cancelled. |
| Oct. 2010 posting | Plaintiff applied. | Jan. 2011, Position cancelled. |
| Nov. 2010 posting | Plaintiff applied. | No Date, Position cancelled. |
| July 2011 posting | Plaintiff applied. | Sept. 2011, JP hired; Dec. 2011, Delos Reyes begins. |

Plaintiff can get no further relief from the "continuing violations" doctrine.  "It has been the law of this Circuit that under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012).  "However, courts have consistently held that failures to promote are discrete acts that do not constitute a continuing violation."  *Grant v. Pathmark Stores, Inc.*, No. 06 Civ. 5755, 2009 WL 2263795, at *7 (S.D.N.Y. July 29, 2009) (collecting cases).  Accordingly, all Title VII claims related to Defendant's failure to hire Plaintiff for the 2008, 2009 and the October 2010 postings are time barred.  Similarly, all NYSHRL and NYCHRL claims related to Defendant's failure to hire Plaintiff for the 2008 and 2009 postings are time barred.[1]

### 2. *Summary Judgment Standard for Employment Discrimination*

At summary judgment, courts employ the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) to analyze employment discrimination claims under Title VII and the NYSHRL.  *See Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) (applying *McDonnell Douglas* analysis to a failure to

---

[1]     As discussed *infra*, each of these claims also fails on the merits.

promote claim); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (applying federal standards of proof to discrimination claims under the NYSHRL).  Claims under the NYCHRL must be "reviewed independently from and 'more liberally' than their federal and state counterparts."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).

At the first stage under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a prima facie case.  To establish a prima facie case of a discriminatory failure to promote, a plaintiff ordinarily must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."  *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004) (internal quotation marks omitted).  "In all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff was rejected under circumstances which give rise to an inference of unlawful discrimination."  *Aulicino*, 580 F.3d at 80 (internal quotation marks omitted).

"If the plaintiff carries that burden, the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions."  *Id.*  "If the defendant meets this second burden, to defeat summary judgment the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination" and were false.  *Id.* (internal quotation marks and alteration omitted); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

### 3.    *2008, 2009 and 2010 Analyst Positions*

Even if the claims for failure to hire Plaintiff to the 2008, 2009 and 2010 Analyst positions were not wholly or partially time barred, Defendant is entitled to summary judgment because Plaintiff cannot make a prima facie case.  First, as to the 2008 position, Plaintiff did not apply for the position and in any case was not qualified for it.  Second, as to the 2009 positions, Plaintiff again did not apply and the position was cancelled.  Third, as to the 2010 positions, even though Plaintiff did apply, the positions were also eventually withdrawn and never filled.  Whether under Title VII and the NYSHRL, or under the more liberal NYCHRL, Plaintiff cannot maintain any claims for discriminatory failure to promote as to the 2008, 2009 and 2010 positions.  (The 2011 position is discussed below.)

Plaintiff's arguments in opposition are unavailing.  First, he argues that he did not apply for the 2008 position because he did not know about it.   "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer."  *Petrosino*, 385 F.3d at 227.  Even assuming the 2008 position was not posted, Plaintiff cannot make out a prima facie case because he was not eligible for the position.  He joined Operations Support in 2008, and Con Edison policy required him to remain in his position for 24 months before seeking another position.

Second, Plaintiff argues that he did not apply for the 2009 position because Ms. Simpson told him it was meant for JP, and that that "[t]he positions [in] 2009-2010 were obviously withdrawn because there was not a better suited candidate and Con Edison did not want me as a candidate."  The record does not bear out Plaintiff's conclusory speculation of Defendant's

16

discriminatory intent.  To the contrary, Defendant has presented uncontroverted evidence that the

positions were cancelled due to budgetary constraints.  Even if Plaintiff's arguments were

credited, however, he cannot establish the fourth prong of the prima facie case because,

regardless of intent, Defendant did not hire anyone for the cancelled positions.

### 4.    *2011 Analyst Position*

Plaintiff appears to challenge two separate aspects of Con Edison's failure to hire him for

the 2011 Analyst position.  First, he challenges the initial selection of JP and the subsequent

selection of Mr. Delos Reyes on the basis of racial discrimination.  Assuming without deciding

that Plaintiff can establish a prima facie case, Defendant has offered a legitimate non-

discriminatory reason for its actions, and Plaintiff has not proffered sufficient evidence from

which a reasonable jury could infer that Defendant's selections of JP and then Mr. Delos Reyes

were more likely than not based at least in part on discrimination.

Defendant has offered compelling non-discriminatory reasons for offering the 2011

Analyst position first to JP, and then to Mr. Delos Reyes, and not to Plaintiff.  First, JP

significantly outperformed Plaintiff at every stage of the selection process -- in the technical

interview, the written exercise and the structured interview.  Second, Plaintiff's response to the

written exercise was submitted late.  Third, Plaintiff's former supervisor provided the selection

committee negative comments about his initiative, including that she had found Plaintiff sleeping

on the job.  Fourth, unlike Plaintiff, Mr. Delos Reyes had a proven track record of successful

work in the Information Resources group.

At the final stage of the analysis, to successfully demonstrate discriminatory motive based

"on the strength of a discrepancy in qualifications," Plaintiff must show that his "credentials

[were] so superior to the credentials of the person selected for the job that no reasonable person,

in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted).  Plaintiff cannot meet this burden with respect to either JP or Mr. Delos Reyes.  Plaintiff's subjective belief that he is better qualified than both JP and Mr. Delos Reyes falls short of sustaining his burden.  "[A] plaintiff's sense of being discriminated against is not evidence of discrimination."  *Lloyd v. Holder*, No. 11 Civ. 3154, 2013 WL 6667531, at *8 (S.D.N.Y. Dec. 17, 2013) (collecting cases).

As to the selection of JP over Plaintiff, Plaintiff can at most demonstrate that JP received preferential treatment in the promotion because of his friendship with Mr. Castro or because he was more popular since his stepfather also worked at Con Edison.  However, even if true, neither of these reasons constitutes unlawful discrimination based on a protected category -- in particular, race or national origin -- in violation of Title VII, the NYSHRL or the NYCHRL.  *See, e.g.*, *Lee v. Poughkeepsie City Sch. Dist.*, No. 06 Civ. 4660, 2008 WL 852790, at *8 (S.D.N.Y. Mar. 31, 2008) ("Mere proof of cronyism . . . does not demonstrate race-based . . . animus, and cannot on its own satisfy Plaintiff's burden under . . . Title VII").  Similarly, as to the selection of Mr. Delos Reyes over Plaintiff, Plaintiff does not argue that Mr. Delos Reyes was selected over him for race-based reasons and concedes that he was qualified and chosen because members of the Information Resources group knew him.

In sum, there is no evidence in the record that Plaintiff was denied the 2011 Analyst position because of his race, color or national origin.  Accordingly, whether under *McDonnell Douglas* or the more liberal NYCHRL, Defendant is entitled to summary judgment on the failure to promote claim.  *See, e.g.*, *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 20 (2d Cir. 2013)

(NYCHRL "still requires a showing of some evidence from which discrimination can be inferred.").

### B. Unequal Conditions

Defendants are granted summary judgment on Plaintiff's claim of unequal work conditions.

To make out a prima facie claim based on a disparate treatment in work conditions, a plaintiff must show that: "(1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (citing *McDonnell Douglas*, 411 U.S. at 802). A plaintiff sustains an "adverse employment action" if she "endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (alteration omitted). "It is well settled that an inference of discriminatory intent may be derived from a variety of circumstances, including . . . the more favorable treatment of employees not in the protected group." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009). If a Plaintiff sustains her burden of proving a prima facie case, the remaining analysis follows under *McDonnell Douglas*.

Plaintiff's principal complaint is that he was assigned "out-of-title" technical work traditionally performed by an analyst without having the title and salary of an analyst. Even assuming Plaintiff's unequal treatment claims are timely under the "continuing violations"

doctrine, the claim fails on the merits because Plaintiff cannot establish a prima facie case of disparate treatment.  First, technical assignments, which have always been a part of Plaintiff's normal responsibilities, do not constitute "adverse employment actions" because Plaintiff did not suffer any negative consequences such as denial of a bonus, salary cut or suspension as a result; to the contrary, he repeatedly earned pay raises based on his technical work.  *See Rodriguez v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234, 2013 WL 5230037, at *3 (E.D.N.Y. Sept. 16, 2013) (collecting cases).  Second, "Plaintiff has produced no evidence to suggest that [his] supervisors forced [him] to undertake [technical] work for discriminatory reasons."  *Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene*, No. 07 Civ. 2235, 2009 WL 812263, at *5 (S.D.N.Y. Mar. 26, 2009).  Instead, the record shows that Plaintiff enjoyed the work and at least one member outside Plaintiff's protected group -- JP -- was given the same technical tasks Plaintiff complains about.

Plaintiff's arguments urging a contrary conclusion fail.  First, Plaintiff states, "I have witness[ed] others such as Vernell Phifer and Rena Hughes treated unequally to the point that Ms. Hughes ultimately was forced to quit Con Edison and take a position elsewhere."  No further information is provided as to the identities of either Vernell Phifer or Rena Hughes.  In any case, as the Second Circuit has said in the sex-discrimination context, "courts have consistently emphasized that the ultimate issue is the reasons for the *individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).  Second, Plaintiff misunderstands his burden under the required *McDonnell Douglas* analysis, arguing that "[t]he Defense has yet to show another of my race or cultural background in Gas Operations that holds the title of Administrative Assistant and performs Analyst and Senior Analyst duties."  As explained above, before Defendant must show any facts,

Plaintiff must establish a prima facie case of discrimination.

Finally, to the extent Plaintiff now claims unequal treatment based on favoritism towards JP because JP is Hispanic and not black, the claim is rejected for failure to exhaust administrative remedies.  A plaintiff may bring a Title VII employment discrimination suit "only after filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'"  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e–5(e)).  "Exhaustion of remedies is a precondition to suit," and accordingly, "a plaintiff typically may raise in a district court complaint only those claims that either were included in or are reasonably related to the allegations contained in her EEOC charge."  *Id.* at 83.  A "claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).  "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving."  *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted).  "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases."  *Williams*, 458 F.3d at 70 (internal citation and quotation marks omitted).

Nothing in Plaintiff's EEOC Charge would have given the agency adequate notice to investigate his claim of disparate treatment based on the favoritism allegedly shown to JP.  The

only claim for unequal treatment fairly traceable to the EEOC is Plaintiff's claim regarding "out-of-title" work, which, for reasons already explained, is dismissed.[2]

### C.   Hostile Work Environment

Because Plaintiff's EEOC Charge includes no facts to suggest a hostile work environment claim, he has effectively waived those claims.  However, because Plaintiff is proceeding pro se and his submissions appear to raise the issue, the claim is briefly addressed on the merits.

Under Title VII and the NYSHRL,

[i]n order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer.

*Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)).

Regarding the first prong, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment."  *Aulicino*, 580 F.3d 73 at 82 (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305, 310-11 (applying the *Harris* standard to New York state law claim of hostile work environment).  "This test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive

---

[2]      In his opposition to Defendant's motion, Plaintiff states that since filing this action, "suddenly" he has been assigned more administrative duties in addition to his "Analyst duties." This statement seems intended to suggest that Defendants are attempting to refute or at least address Plaintiff's out-of-title work claim.   Even if that were the case, any such efforts by Defendants are irrelevant, as this motion is decided based on the factual record presented by the parties before recent events.

work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).

The Second Circuit has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* (citations and internal quotation marks omitted). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* "[R]elevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citation and internal quotation marks omitted). Although one encounter may constitute a hostile work environment if it is sufficiently severe, conduct that can be categorized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998).

In light of this standard, neither Ms. Simpson's isolated observation that Plaintiff speaks well nor JP's sporadic race-based teasing is sufficiently severe to rise to the level of a hostile work environment.

Under the NYCHRL's more liberal standard, a claim of hostile work environment survives summary judgment if there is a triable issue of fact as to whether the plaintiff "has been treated less well than other employees because of [his race]." *Williams v. New York City Hous.*

*Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009); *see also Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 301 (S.D.N.Y. 2012) (same).  Even so, Ms. Simpson's "single statement is insufficient to establish that Plaintiff was subject to a hostile work environment because of [his] race."  *Davis-Bell*, 851 F. Supp. 2d at 676.  Similarly, JP's occasional jokes are no more than "petty slights and trivial inconveniences," which are not actionable under the NYCHRL.  *Id.* at 671.

Accordingly, to the extent not already waived, any hostile environment claims are dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to (i) correct the names of the parties on the docket as reflected in the caption on the first page of this Opinion, (ii) close the motion at Dkt. No. 35, (iii) close this case and (iv) mail a copy of this Opinion and Order to the pro se Plaintiff.

SO ORDERED.

Dated: July 22, 2015
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**